Mr. Rotteveel, the appellate in this case, and right away I will turn the court. I don't think this verdict can be sustained because there is no way to have any confidence in the verdict in this case based on the variety of errors set forth by the case. So I don't think that this test, and I am certainly thinking more careful at whether we have subjected confidence in a verdict. The question is, is an abuse of discretion psychologically impossible, or can we not give every benefit of the doubt to the verdict? That's the correct standard. I'm not asking the court to say what the standard is. I think the evidence here is straightforward. The evidence is that your client got a seller of real estate to boost its price of sale so that the lending agency with an intent to lend home 80% of the purchase price was looking and thinking that the purchase price was higher. And then you get back to your client from the seller so that the bank ends up loaning not 80% but closer to 95%. And with the pre-existing mortgage, which they knew about, ends up loaning more money than the original purchase price, which was $460,000. So why isn't that a fraudulent scheme, which would link a financial institution? One can be hoodwinked only if one does not know. If one is consistent in, and if one knows about, there's not a misrepresentation. Did the escrow officer testify that she knew that the seller was going to take back 87.5? Where's that? The escrow officer, in this case, was. . . It's in the briefs of both the escrow officer. Don't tell me it's in the briefs. Give me the record citation. This argument with your client's on the hook is going to go on for a long period of time Let's look at the records, 340's transcript. It's 8-7-4. Ms. Tingley talks about the HUD one and what's beyond there for Skinner Ridge, which is the county conviction. Ms. Tingley talks about Bank United having all of it, that the HUD one had been given, $87,000 included, to be eventually considered a kickback, had been given, was on the HUD one, that Bank United knew it, and that they had it. She's stated that all of the information, all of this first response to Skinner, and this is at RT-835, we're getting to Bank One, as well as. . . You want me to check? The report is present. Do you have the citation of the extensive record? I'm Jerry Broderick, and it's. . . It is set forth in the proceedings. I don't have the exact site in front of me, but it is set forth right in the. . . if you'll help us open it, what is your name? Both Ms. Tingley, who's the SBO officer, and the individual who prepared the loan application, Ms. Valdez, both stated that on the HUD one contained the entire amount, both the amount that was going to go to the seller, and the secondary of the $87,000, that Bank United had all of it, and that Bank United would not loan until they had seen the final HUD one, and there was no excuse that Bank One did just loan. So the loan went through, Bank One had the HUD one. They wouldn't loan until they had the HUD one, and the HUD one serves the testimony of the SBO officer and the loan process. So it all turns on the issue of whether the HUD one shows the $87,500 kickback, right? They don't think that the entirety turns on that. The entirety turns on whether or not there was a material misrepresentation. Well, that material misrepresentation was a piece of paper that was a kickback. They said we're going to loan more than the purchase price because we have a lot of money in one moment. That's okay, then it's not a receptive practice. That's correct, Your Honor. According to the testimony of Ms. Valdez and Ms. Tate, the SBO title officers, that was the common practice in 2006. I guess my worry about this is not trying to figure out materiality and what I'm thinking about materiality, and then Jenkins says it's not material, whether the bank actually relied on the statement or were influenced by them. It says there's no requirement that the statements actually influence those to whom they addressed for mail fraud. And then Blanksteen tells me that what's important is the intent of the person making the statement, that it be in furtherance of some fraudulent statement. So then I say, okay, now I know what materiality means. So I have testimony that the defendant falsely inflated the value of the property. I have testimony that the defendant falsely reported the buyer's debts and income. And then if they inflate the value of the property and they falsely report the debts and the income, then I don't have any reason or way to understand how that information isn't capable, which is all I've got to find for materiality, capable of influencing the lender as they are the ones who will rely upon the data. I agree with the court, but the facts in this case are that the testimony that came out just in the account of my witnesses alone was a piece of the type of information that lenders didn't know how to follow. But we're not talking about whether they actually relied. That's what Jenkins says. It says it's immaterial whether they relied or they were influenced. That's immaterial. All that's material is with the intent of the person making the statement that it be in furtherance of the fraudulent purpose. So now I have testimony that your client falsely inflated the value of the property. That seems to give to his intent that he falsely reported the buyer's debts and income. That seems to go to intent, and I know that that information is capable, that's the important word, capable of influencing the lender as they're the ones upon which rely on the data. They don't have to have relied, only that it's capable of relying. So again, it seems to me, based on sufficient evidence to support the verdict, we have sufficient evidence. I understand the court's position, and I will say it. It is my position. It's my question. If materiality has nothing to do with reliance, and materiality has nothing to do with whether they were influenced, just your client's own idea, intent, as to whether they would influence seems to me I have it. Your Honor, I think that the facts in this case are different than what the hypothetical court is giving. In this case, very clearly. This case is not hypothetical. These are the holdings in Jenkins and Blankstein. And the facts in this case, Your Honor, are there distinctly testified. They are as valid as testified. They got the requirements from the lender. The lender told them the income they needed for these loans. The lenders told them what kind of ratios they needed for these loans. She then literally filled that out according to the ratios and according to the instructions of the lender, and then conferred with the buyer, Dennis Doradoville, at times. But with the buyer, he said, does this sound reasonable? He said, it's state-of-the-art loans. He said, yes, does this sound reasonable? Meaning that you will have a certain income in the future. You cited Valdez, the transcripture of your testimony. The question was, so for this particular instance, this loan at least wasn't going to cover the full purchase price. Is that right? The difference was no investment property loans at the time. I'm talking about 2006. Never covered full purchase price, but I can remember. So she didn't say that there was a custom in 2006 that that's the way they did business. They were loaning more than the purchase price. She did not testify to that sentence. Exactly the opposite. But she did testify that the information she put on the loan applications was based on the information she got, requested information from the lenders. She then filled that out and came up with those numbers and that income that was needed on the loan. And then ran it by the buyer and said, is that reasonable? Meaning that she didn't testify. That's the type of income you would get in the future. We move to affected financial institution. I looked pretty hard at this argument because I thought you had a good argument to be made. But then again, I looked at Starchill. Starchill says, affected for the purposes of this requirement is when the bank assumes any new or increased risk. Need not actually suffer harm or damage because the mere presence of increased risk or result against new risk is enough. The misrepresentation itself is sufficient conditions for the institution to be affected even if no harm or default occurs. So then I look at Schroeder. Then I look again at what she said and it doesn't seem to be. I need to witness this more because all I need to have, which we had evidence of, that the bank assumed a new or increased risk, which is all I've got to have for a fact. That is correct, Your Honor. I think the court is correct. However, in this case, more evidence came in, which diminished the evidence. But it is because there's more evidence that comes in. Don't go there. Because if the jury can find that there is substantial evidence to sustain what they do of new or increased risk or that the institution would be affected even if no harm or default occurs just because there's other evidence that's not the same as doesn't mean that the verdict just cannot be sustained. That is correct, Your Honor. But I can see the evidence that came in. I can see it's diminished. It's diminished. So that's not a very good argument on this sufficient evidence to sustain the verdict, is it? It is enough in this case, Your Honor. Why is it enough here when it isn't enough anyplace else? You're a good defense lawyer. You know you can if there's any evidence in there to sustain it or not. I asked the government in the closing to point to any evidence whatsoever. As a matter of fact, they were silent on it. I look for the evidence because now I know what they've got to prove, and I thought there was evidence. I understand the court's comments and reasoning. I would like to reserve two minutes. I'm at three minutes now. I would like to reserve two minutes, and I would like to address briefly what I think is a structural error in this case. The court answered what I consider to be a very, very important question to ask whether or not this questioner determined whether or not the amount of this person, this 87,000 or so, had to be in the HUD one. And the court's first reaction is they're confused. I'm worried they're down the wrong track. There was no further investigation of that, and the court didn't answer that without the possibility of some defense counsel. Well, just a minute. Defense counsel was there all the time. The judge did anything. Defense counsel agreed the judge should say nothing. The only disagreement in the record was with the answer to the third question, which was about the indictment. There was no disagreement about what the judge ought to do on the second question. There was no opportunity. There was no opportunity for the formulation of that. Well, I said, just a minute. He's standing right there. The judge is talking about it. No opportunity? Well, the judge says, I'm thinking about it, but I'm not going to do this. We'll have time to talk about it later, which is very clearly what the court said. I'm thinking about instructing these fellows as follows. Did anybody ever object as what the judge is doing? There was no time. My worry is, having been in the judge's spot, I'm talking to you, bringing everybody in. This isn't a case where you were left out and we, the judge, decided this all on his own. This is where he talked to you about everything he talked to everybody else about. And then he makes a decision as, I'm not going to do anything, because that's what he said and you didn't object. I think this is something to look with on the next part of your dictation. What's your best case for that? The facts in this case. Oh. What's that case? Friends. Friends. So this is not my case. Friends. They're not that. Musladeen. No. That isn't that. Why is Musladeen similar? Musladeen is very similar in that, well, actually, Musladeen is not as strong an argument for reversible as I have here. In Musladeen, they simply asked for a remaining assumption. Now, in this case, they clearly asked for direction on the law. They said, does this have to be disclosed to the lender on the line? One, it clearly works. It asks for direction about the facts as they apply to the law, which it says this court knows, and I might increase, that's what the trial judge is there for. Instead, the trial judge, after telling the defense counsel he wasn't going to answer it, simply forgot and voluntarily answered it with no time for discussion. How about the third? No. No, the second, Your Honor. You showed the HUD. By the way, Your Honor, it was sent back out. I think for 29 and a half, excuse me, it was sent back out. He didn't answer the second question. He didn't answer it. When he told them what, he gave them an answer, which was there will be no answer. There will be no answer. Look at the record. It's in the record. If there's anything, go find it, which is what every judge says when he's not trying to establish the facts for the jury. Unless they're confused in this court, then I'm certain the court is there to answer the jury. When they are confused and have a question. This is what standard of review? That's, I believe. Standard of review. This is structural error. I'm calling it. This is structural error. This is an abuse of discretion. Give me the best case that says this is an abuse of discretion review. Abuse of discretion, I believe, would be under Franzen. But in this case, I stick with the argument that it is clearly structural error. They were confused and there was no answer to them. All right. Thank you. Good morning. Justin Lee on behalf of the United States. I was trial counsel below. May it please the court. Was the judge lawful? No, Your Honor. No? Okay. He was just going to help his colleague. Okay. Go on. May it please the court, Your Honor. There are no arguments that the defendant has raised  Initially, I'd like to respond to two questions that the court raised to my colleague. First is to Judge Bea's question about the HUD-1. The HUD-1 could be found in SCR-194. And there is no indication on the HUD-1 that there was an $87,000 cutback. Second is to Judge Smith's question about the standard of review for abuse of discretion. That's in Produsco or Umlani. That was cited within Produsco. Then the judge's supplemental instructions to the jury are review for abuse of discretion. I'm going to respond to this structural error argument. I responded, but how do you respond? There is no indication, and I have not seen any case law that supports this structural error, that the judge responded to the jury's question by informing them that he could not answer it and refer the fact to the instructions. And that is exactly how the judge had responded to their very first question. There was no objection at the time by the defendant. Well, did the defense counsel have an opportunity to make an objection? Yes, Your Honor. Both when the judge was instructing the jury if that was an objection that the defendant had, he could have objected right there or asked for a sidebar, and immediately thereafter he could have objected to the judge. Because right after the judge sent the jury out, there was discussion and a note sent to the jury regarding the indictment and that it would not be read. So there was ample opportunity for defense counsel to object if there was an objection. If there are no further questions, I'll give you our move to this other issue, which is materiality, which you beat out pretty hard. With respect to materiality, the defendant confuses the standard for materiality. As recently as the Lindsay case in this court, materiality is not looked at through reliance by a lender. It is looked at in an objective standard, not the subjective standard of the impact. It is the statement itself that is analyzed to determine if it is capable of influencing. Here there were many statements that were capable of influencing the lending decision. For example, the qualifications of the buyer on the loan application. The loan application indicated that the buyer made $30,000, and he did not. It indicated that the buyer was receiving $3,000 in rent when he was not. It indicated that the down payment was not borrowed, when in fact the down payment was being funded by the real estate agent's defendant. What about the effect of the financial institution? Judge Smith, you indicated that the Stargill case would end this inquiry, and that is correct. The Stargill case says that if there is a false statement that is provided to the lending institution, that false statement in and of itself is enough to expose that lending institution to new or increased risk of loss. As long as it assumes a new or increased loss, regardless of anything else, you've met the burden on affecting the financial institution. You're right. We would also need to prove that this was a financial institution. There was an FDIC certificate that was introduced into evidence that showed that this was a financial institution at the time. Moreover, the instructions on the lending institution indicated that they believed this loan was for 90%, and ultimately they ended up funding 107% of the purchase price of this house. That in and of itself exposed them to increased loss. The false statement has to be material to the financial institution's decision to lend to the commercial institution. I mean, for instance, if the false statement is an incorrect zip code, that would not be material to a lending institution. That's correct with respect to the materiality standard, Your Honor. So here, what was the false statement that was material? There were several false statements, Your Honor. First, the income, the grants, the down payment source, and the amount of the purchase price. Yes, Your Honor. For all of them, it's not necessary to show that the particular financial institution made its decision based upon those representations. No, Your Honor. All right. Let me ask you this. Was there any testimony that a reasonable lender would have reacted differently had he known the proper source of the down payment, the proper amount of the price, the proper amount of the income, the proper amount of the grants? No, Your Honor. There was not correct evidence that a reasonable lender. It was the evidence that the trial court had was the loan officers, two separate loan officers, and two separate lender representatives all testified to the process by which they analyzed what information was needed to be given to the lending institution and what the lending institution did with that information. Did any of those witnesses testify that they would not need a loan greater than the purchase price? There was not a lending institution that said that, but the title office, the mortgage broker, specifically said that no bank was paying for more than 100 percent of the purchase price. All right. Thank you. If there are no further questions, I'll suspend the briefing. All right. Thank you, Your Honor. This is good. Thank you. All right. Thank you, Your Honor.
judges: Bea, N.R. Smith, Robreno